UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ZINA SAUNDERS,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,[1]

    Defendant.

No. 12 C 1407

Magistrate Judge Mary M. Rowland

# MEMORANDUM OPINION AND ORDER

Plaintiff Zina Saunders filed this action seeking reversal of the final decision of the Commissioner of Social Security (Commissioner) denying her applications for Supplemental Security Income under Title XVI of the Social Security Act (SSA). 42 U.S.C. §§ 416, 423(d), 1381a. The parties have consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and have filed cross motions for summary judgment. For the reasons stated below, the case is remanded for further proceedings consistent with this opinion.

## I. THE SEQUENTIAL EVALUATION PROCESS

To recover Supplemental Security Income (SSI) under Title XVI of the Social Security Act, a claimant must establish that he or she is disabled within the meaning

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security and is substituted for her predecessor, Michael J. Astrue, as the proper defendant in this action. Fed. R. Civ. P. 26(d)(1).

of the SSA.[2] *York v. Massanari*, 155 F. Supp. 2d 973, 977 (N.D. Ill. 2001). A person is disabled if he or she is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). In determining whether a claimant suffers from a disability, the Commissioner conducts a standard five-step inquiry:

1. Is the claimant presently unemployed?
2. Does the claimant have a severe medically determinable physical or mental impairment that interferes with basic work-related activities and is expected to last at least 12 months?
3. Does the impairment meet or equal one of a list of specific impairments enumerated in the regulations?
4. Is the claimant unable to perform his or her former occupation?
5. Is the claimant unable to perform any other work?

*Id.* §§ 416.909, 416.920; *see Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985). "The burden of proof is on the claimant through step four; only at step five does the burden shift to the Commissioner." *Clifford*, 227 F.3d at 868.

---

[2] The regulations governing the determination of disability for SSI are found at 20 C.F.R. § 416.901 *et seq.*

## II. THE PROCEDURAL HISTORY

Plaintiff applied for SSI on April 17, 2008, alleging that she became disabled on April 2, 2006, because of hypertension, congestive heart failure, anemia, shortness of breath, pneumonia, fatigue, and obesity. (R. at 14, 155–56). The application was denied initially and on reconsideration, after which Plaintiff filed a timely request for a hearing. (*Id.* at 14, 69–70, 73–90). On July 13, 2010, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge (ALJ). (*Id.* at 14, 26–68). The ALJ also heard testimony from Ashok Jilhewar, M.D., a medical expert (ME), and Cheryl R. Hoiseth, a vocational expert (VE). (*Id.* at 14, 26–68, 145–46).

The ALJ denied Plaintiff's request for benefits on September 22, 2010. (R. at 14–20). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff has not engaged in substantial gainful activity since April 17, 2008, the application date. (*Id.* at 16). At step two, the ALJ found that Plaintiff's congestive heart failure, hypertension, and obesity are severe impairments. (*Id.*). At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations. (*Id.*).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[3] and determined that she has the RFC to "perform sedentary work as defined in 20 C.F.R. § 416.967(a) except she is also limited in performing no climbing or crawling and

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 404.1520(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

only occasional stooping and balancing. [Plaintiff] is also limited in not working in any situations exposing her to extreme heat." (R. at 16–17). At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work. (*Id.* at 19). At step five, based on Plaintiff's RFC, her vocational factors, and the VE's testimony, the ALJ determined there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as receptionist, order clerk, and dispatcher. (*Id.* at 19–20). Accordingly, the ALJ concluded that Plaintiff was not suffering from a disability as defined by the SSA.[4] (*Id.* at 20).

The Appeals Council denied Plaintiff's request for review on December 27, 2011. (R. at 1–5). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

### III. THE STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is authorized by § 405(g) of the SSA. In reviewing this decision, the Court may not engage in its own analysis of whether the plaintiff is severely impaired as defined by the Social Security Regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id.* The Court's task is "limited to determining whether the ALJ's factual findings are supported by

---

[4] Plaintiff filed a new application for benefits on April 24, 2012. (Mot. 2 n.2). On July 13, 2012, the Commissioner found Plaintiff to be disabled as of April 2012. (*Id.* Ex. A). Thus, the instant application affects the eligibility of benefits between April 2006 and April 2012.

substantial evidence." *Id.* (citing § 405(g)). Evidence is considered substantial "if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation omitted). The Court must critically review the ALJ's decision to ensure that the ALJ has built an "accurate and logical bridge from the evidence to his conclusion." *Young,* 362 F.3d at 1002. Where the Commissioner's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

## IV. THE RELEVANT MEDICAL EVIDENCE

Plaintiff was first diagnosed with congestive heart failure in March 2001. (R. at 311). In March 2008, Plaintiff reported chest pain, shortness of breath, fatigue, and a chronic cough. (*Id.* at 331, 355). Subhash Patel, M.D. diagnosed decompensated congestive heart failure, pneumonia, uncontrolled hypertension, anemia, and deep venous thrombosis prophylaxis. (*Id.* at 356–57).

Plaintiff began treating with Pamela D. Smith, M.D. in 2005. (R. at 453; *see id.* at 363). In June 2008, Dr. Smith diagnosed hypertension, congestive heart failure, obesity, and menorrhagia. (*Id.* at 363). By March 2009, Plaintiff's blood pressure was still not under control, her congestive heart failure was stable, her weight had increased 25 pounds in a year, and her menorrhagia was resolved. (*Id.* at 464). Dr. Smith ordered an echocardiogram. (*Id.*). In March 2010, Plaintiff's hypertension was still not under control, her congestive heart failure was stable, and she had lost 14 pounds. (*Id.* at 500). Dr. Smith ordered another echocardiogram. (*Id.*). By June 2010, Plaintiff had regained 10 pounds. (*Id.* at 496). Dr. Smith concluded that Plaintiff's congestive heart failure was stable but that her hypertension was still not at goal. (*Id.*).

On July 1, 2008, Dilip Patel, M.D. performed a consultative examination. (R. at 429–31). Plaintiff reported shortness of breath on exertion and bilateral knee pain and hip stiffness. (*Id.* at 429). On examination, Plaintiff was 5'9" tall and weighed 368 pounds; her blood pressure was 170/90. (*Id.* at 430). She had a limitation of movement in her hips and knees. (*Id.*). Only 1+ edema was noted and the straight-leg-raising test was normal. (*Id.*). No neurological abnormalities were noted. (*Id.* at 431). Plaintiff's dexterity and hand grips were normal. (*Id.*). She was unable to heel-toe walk or squat. (*Id.*). Dr. Patel diagnosed congestive heart failure, uncontrolled hypertension, coronary heart disease by history, and osteoarthritis of knees and hips. (*Id.*).

On July 11, 2008, Charles Kenney, M.D., a DDS consultant, reviewed the medical evidence and completed a physical RFC assessment. (R. at 433–40). He concluded that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk at least 2 hours and sit about 6 hours in an 8-hour workday, never climb ladders, ropes, or scaffolds, and should avoid exposures to extreme heat, humidity, fumes, odors, dusts, gases, poor ventilation, and hazards. (*Id.* at 434–37). On October 8, 2008, Calixto Aquino, M.D., a DDS consultant, affirmed Dr. Kenney's RFC. (*Id.* at 441–43).

On April 20, 2009, Dr. Smith completed an RFC questionnaire. (R. at 453–56). She reported seeing Plaintiff two to three times a year since 2005. (*Id.* at 453; *see id.* at 558). Dr. Smith reported that Plaintiff exhibits chest pain, shortness of breath, fatigue, intermittent edema, palpitations, and dizziness. (*Id.*). She diagnosed congestive heart failure (NYHA Class III),[5] hypertension, obesity, low back pain, and osteoarthritis. (*Id.*). Dr. Smith opined that Plaintiff has "marked limitation of physical activity, as demonstrated by fatigue, palpitation, dyspnea, or anginal discomfort on ordinary physical activity, even though [she] is comfortable at rest." (*Id.*). She concluded that Plaintiff was capable of only low stress jobs because her physical ailments cause emotional difficulties and frequently interfere with attention and

---

[5] The New York Heart Association (NYHA) functional classification "provides a simple way of classifying the extent of heart failure. It places patients in one of four categories based on how much they are limited during physical activity; the limitations/symptoms are in regards to normal breathing and varying degrees in shortness of breath and or angina pain." <en.wikipedia.org/wiki/New_York_Heart_Association_Functional_Classification> Class III patients exhibit "[m]arked limitation in activity due to symptoms, even during less-than-ordinary activity, e.g. walking short distances (20–100 m). Comfortable only at rest." *Id.*

concentration needed to perform even simple work tasks. (*Id.* at 454). Dr. Smith reported that Plaintiff was prescribed Metoprolol, Hydralazine, Enalapril, Lasix, Metolazone, Isordil, Methocarbamol, and Motrin 600mg, but had no side effects from her medications.[6] She concluded that Plaintiff was capable of sitting for about 2 hours and standing or walking less than 2 hours in an 8-hour workday. (*Id.* at 455). Dr. Smith also concluded that Plaintiff needs a job that permits shifting positions at will and allows unscheduled 20-minute breaks every hour. (*Id.*). She further concluded that Plaintiff is unable to lift even 10 pounds and cannot twist, stoop, crouch/squat, or climb ladders, and can rarely climb stairs. (*Id.*). Finally, Dr. Smith opined that Plaintiff would likely miss more than four days of work per month. (*Id.* at 456).

On April 29, 2010, an echocardiogram was performed. (R. at 488–89). The study revealed mild ventricle dilation, ejection fraction at 40%, diffuse hypokinesis, and moderate concentric hypertrophy.[7] (*Id.* at 488). A full night polysomnogram was performed on November 10, 2010. (*Id.* at 559–62). The study found obstructive hypopneas, moderate snoring, and sleep disordered breathing. (*Id.* at 561). Swamy

---

[6] Metoprolol is used to treat high blood pressure and to prevent angina. Hydralazine and Enalapril are used to treat high blood pressure. Lasix (Furosemide) and Metolazone are used to reduce the swelling and fluid retention caused by various medical problems, including heart disease. Isordil (Isosorbide) is used to treat or prevent angina. Methocarbamol is a muscle relaxant. <www.nlm.nih.gov/medlineplus/druginfo>

[7] Ejection fraction (EF) represents the volumetric fraction of blood pumped out of the heart with each heartbeat. <en.wikipedia.org/wiki/Ejection_fraction> Normal resting EF is usually 50% to 75%. *The Merck Manual* 1615 (17th ed. 1999). Hypokinesis is impaired movement of the heart walls. *See Reindl v. Astrue*, No. 09 C 2695, 2010 WL 2893611, at * 5 (N.D. Ill. July 22, 2010). Concentric hypertrophy is a thickening of the walls of the heart. *Stedman's Medical Dictionary* 677 (5th ed. 1982).

Nagubadi, M.D. concluded that the study was consistent with moderate obstructive sleep syndrome. (*Id.* at 562).

On July 13, 2010, Plaintiff testified at the hearing before the ALJ. (R. at 30–42). She stated that she has side effects from her medications that make her extremely fatigued and drowsy, and her diuretics cause her to constantly go to the bathroom. (*Id.* at 31, 35–36). The medications also affect her concentration and focus; she is not able to pay attention. (*Id.* at 37). She has to keep her legs elevated above her heart to reduce the swelling in her legs. (*Id.* at 39). Plaintiff testified that she is unable to do normal household chores without frequently stopping to rest. (*Id.* at 33). She cannot walk up a flight of stairs without stopping to rest every five steps. (*Id.* at 33–34).

The VE testified that someone who misses more than 10 or 11 days a year or who takes frequent breaks, other than a normal morning and afternoon break, would not be employable. (R. at 63–66). The VE also concluded that an employer would not accommodate someone who had to elevate their legs above heart level. (*Id.* at 66–67).

## V. ANALYSIS

Plaintiff contends that the ALJ erred in discounting her testimony about the nature and extent of her ailments. (Mot. 10–11). She asserts that the ALJ's credibility determination was mere boilerplate and improper. (*Id.*).

In determining credibility, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 404.1529(c); Social Security Ruling (SSR)[8] 96-7p. An ALJ may not discredit a claimant's testimony about her symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562 (citing SSR 96-7p; 20 C.F.R. § 404.1529(c)(2)); *see Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006) ("The administrative law judge cannot disbelieve [the claimant's] testimony solely because it seems in excess of the 'objective' medical testimony."). If a claimant's symptoms are not supported by medical evidence, the ALJ may not ignore available evidence. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 540 (7th Cir. 2003). Indeed, SSR 96-7p requires the ALJ to consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and other relevant evidence in the case record." *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) (citation omitted); *see* 20 C.F.R. § 404.1529(c); SSR 96-7p.

---

[8] SSRs "are interpretive rules intended to offer guidance to agency adjudicators. While they do not have the force of law or properly promulgated notice and comment regulations, the agency makes SSRs binding on all components of the Social Security Administration." *Nelson v. Apfel*, 210 F.3d 799, 803 (7th Cir. 2000); *see* 20 C.F.R. § 402.35(b)(1). While the Court is "not invariably *bound* by an agency's policy statements," the Court "generally defer[s] to an agency's interpretations of the legal regime it is charged with administrating." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009).

The Court will uphold an ALJ's credibility finding if the ALJ gives specific reasons for that finding, supported by substantial evidence. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). The ALJ's decision "must contain specific reasons for a credibility finding; the ALJ may not simply recite the factors that are described in the regulations." *Steele*, 290 F.3d at 942 (citation omitted); *see* SSR 96-7p. "Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942.

In his decision, the ALJ made the following credibility determination:

> After careful consideration of the evidence, the undersigned finds that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

(R. at 19). Under the circumstances, the reason provided by the ALJ for rejecting Plaintiff's credibility is not legally sufficient or supported by substantial evidence.

The ALJ's analysis is mere boilerplate that "yields no clue to what weight the trier of fact gave [Plaintiff's] testimony." *Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) (reviewing similar language and finding that "[i]t is not only boilerplate; it is meaningless boilerplate[; t]he statement by a trier of fact that a witness's testimony is 'not *entirely* credible' yields no clue to what weight the trier of fact gave the testimony"); *see Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787–88 (7th Cir. 2003) ("This is precisely the kind of conclusory determination SSR 96-7p prohibits. Indeed, the apparently post-hoc statement turns the credibility determination process on its head by finding statements that support the ruling credible and

rejecting those statements that do not, rather than evaluating the Brindisis' credibility as an initial matter in order to come to a decision on the merits."). The ALJ does not explain which of Plaintiff's allegations were credible, which were incredible, or provide reasoning in support of his findings. *See Groneman v. Barnhart*, No. 06 C 0523, 2007 WL 781750, at *11 (N.D. Ill. March 9, 2007) ("The ALJ may have provided a *reason* for rejecting [claimant's] allegations—because he did not seek treatment and follow through with medication—but he did not provide *reasoning*."). The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *2.

The ALJ failed to discuss the SSR 96-7p factors. "In determining credibility an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. § 416.929(c)(3); SSR 96-7p, at *3; *accord Steele*, 290 F.3d at 941–42 ("According to Social Security Ruling 96-7p, . . . the evaluation must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.' Without an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed."). The ALJ's failure to analyze these factors warrants reversal.

*See Villano*, 556 F.3d at 562 (because "the ALJ did not analyze the factors required under SSR 96-7p," "the ALJ failed to build a logical bridge between the evidence and his conclusion that [claimant's] testimony was not credible").

The Commissioner asserts that the ALJ "reasonably found that Plaintiff's claims of total disability were not credible." (Resp. 9) (citing R. at 17–19). The Commissioner contends that "the ALJ explicitly considered Plaintiff's credibility by comparing her allegations against the medical evidence (and lack of objective findings to corroborate her claims) as well as her daily living activities (including her ability to perform light work after alleging disability)." (*Id.*) (citing R. at 17–19). On the contrary, the ALJ's decision contains no discussion of Plaintiff's testimony, explicitly or implicitly. (*See* R. at 17–19). Instead, the ALJ merely summarized the medical evidence, adopted the ME's testimony, and rejected Dr. Smith's opinion, finding that it was not supported by the record. (*Id.*). The Court must limit its review to the rationale offered by the ALJ. *See SEC v. Chenery Corp.*, 318 U.S. 80, 90–93 (1943); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("the government's brief and oral argument . . . seem determined to dissolve the *Chenery* doctrine in an acid of harmless error"). And here, the ALJ did not explain which of Plaintiff's allegations were credible, which were incredible, or provide reasoning in support of his findings.

In sum, the ALJ failed to "build an accurate and logical bridge from the evidence to [his] conclusion." *Steele*, 290 F.3d at 941 (internal quotation omitted). This prevents the Court from assessing the validity of the ALJ's findings and providing meaningful judicial review. *See Scott*, 297 F.3d at 595. On remand, the ALJ shall

reevaluate Plaintiff's complaints with due regard for the full range of medical evidence. *See Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

Given the Court's decision to remand the case to properly evaluate Plaintiff's credibility, it declines to address Plaintiff's other contentions. Nevertheless, on remand, the ALJ is reminded that he should evaluate the weight to be afforded treating physicians' opinions by explicitly addressing the required checklist of factors. *See Moss*, 555 F.3d at 561; 20 C.F.R. § 416.927. The ALJ shall reevaluate Plaintiff's physical impairments and RFC, considering all evidence in the record, including Plaintiff's testimony, and shall explain the basis of his findings in accordance with applicable regulations and rulings.

## VI. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment [15] is **GRANTED**, and Defendant's Motion for Summary Judgment [24] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: October 7, 2013

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge